UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Roberto Franco, Analese Franco,
Gilbert Castillo, Michael Castillo,
Nancy Castillo, Thomas Bostwick,
R.F., A.F., and A.F., minors,

        Plaintiffs,                **MEMORANDUM OPINION
                                                  AND ORDER**
    v.                                                   Civil No. 12-1706 ADM/JJG

State of Minnesota, County of Ramsey,
City of St. Paul, St. Paul Police Department,
Shawn Scovill, Steve Anderson, Patrick
Chesier, Craig Gromek, Terry Ecker, Andy
Gubash, Mike Heski, Rick Porras, Joe
Robertson, Jeremiah Simonson, Tommy
Booth, Jason Polinski, and Chris Melton,

        Defendants.

_____

Scott Selmer, Esq., Conner McAlister Selmer, LLC, Minneapolis, MN, on behalf of Plaintiffs.

Kristyn Anderson, Esq., Assistant Attorney General for the State of Minnesota, Saint Paul, MN, on behalf of Defendant State of Minnesota.

C. David Dietz, Esq., Assistant Ramsey County Attorney, Saint Paul, MN, on behalf of Defendant Ramsey County.

K. Meghan Kisch, Esq., Assistant City Attorney, Saint Paul, MN, on behalf of Defendants City of Saint Paul, Saint Paul Police Department, Officer Anderson, Officer Chesier, and Officer Gromek.

Joseph E. Flynn, Esq., Jardine, Logan & O'Brien, PLLP, Lake Elmo, MN, on behalf of Defendants Scovill, Ecker, Gubash, Heski, Porras, Robertson, Simonson, Booth, Polinski, and Melton.
_____

## I. INTRODUCTION

       This matter is before the undersigned United States District Judge for a ruling on

Defendants' motions to dismiss and Plaintiffs' motions for continuance. For the reasons stated

below, Defendants' motions to dismiss are granted and Plaintiffs' motions for continuance are denied.

## II. BACKGROUND

### A. Federal Proceedings

On July 16, 2012, Plaintiffs Roberto Franco, Analese Franco, Gilbert Castillo, Michael Castillo, Nancy Castillo, the three minors, and Thomas Bostwick's (collectively, the "Plaintiffs") filed a Complaint naming a long list of Defendants for alleged violations of 42 U.S.C. §§ 1981 and 1983, and the Fourth and Fourteenth Amendments of the United States Constitution. Compl. [Docket No. 1]. Plaintiffs, through counsel Scott Selmer, commenced the action without paying the initial filing fee. The Complaint was nevertheless filed because Analese Franco filed an application to proceed in forma pauperis ("IFP"), as if she was filing the complaint pro se. Magistrate Judge Jeanne J. Graham held that if Plaintiffs were to proceed IFP, the other eight plaintiffs would need to seek leave to proceed IFP as well. Thereafter, Nancy Castillo's IFP application demonstrated that Plaintiffs were not eligible for IFP status. Order, Sept. 12, 2012 [Docket No. 9]. Nancy Castillo then paid the filing fee for Plaintiffs' collective action.

On October 3, 2012, Plaintiffs filed an Amended Complaint [Docket No. 11], adding alleged violations of 42 U.S.C. §§ 1985, 1986; Article I, §§ 2, 5, 6, 8, and 10 of the Minnesota Constitution; and Minnesota Statute § 363.03. On December 11, 2012, Judge Graham noted that neither the Complaint (more than 120 days elapsed), nor the Amended Complaint (more than 60 days elapsed) had been properly served on the named Defendants. Order [Docket No. 12]. On December 21, 2012, ten days after Judge Graham's order requiring service of process, Plaintiffs' attorney filed two letters addressed to Judge Graham and a Motion for Extension of Time, all

2

requesting more time to serve Defendants because of the limitations of Mr. Selmer's solo practice. [Docket Nos. 14, 15, and 16]. Judge Graham extended Plaintiffs' time to serve defendants until January 10, 2013.

On January 28, 2013, both the State of Minnesota (the "State") and Ramsey County filed motions to dismiss [Docket Nos. 21 and 25]. Plaintiffs failed to file a response to either motion. On February 19, 2013, without further briefing, the City of Saint Paul, Saint Paul Police Department, and Officers Anderson, Chesier, and Gromek (the "Officers") requested to join, [Docket No. 34], in Ramsey County's motion to dismiss, adopting the statement of facts and parts A, C, and D of Ramsey County's memorandum in support of dismissal. See Ramsey County's Mem. Supp. Mot. Dismiss [Docket No. 27]. On March 4, 2013, the remaining Individual Defendants Scovill, Ecker, Gubash, Heski, Porras, Robertson, Simonson, Booth, Polinski, and Melton (collectively, the remaining "Individual Defendants") filed to join, [Docket No. 40], in Ramsey County's motion to dismiss.[1] Plaintiffs have failed to file a response to any of these motions.[2]

Following a status conference, Judge Graham stayed discovery pending the resolution of Defendants' dispositive motions. A hearing before this Court on Defendants' motions to dismiss was scheduled for 9:00 a.m. on March 21, 2013. At 8:00 p.m. the night before the hearing, too

---

[1] Defendants Ecker and Robertson claim they still have not been properly served and preserve their right to bring a motion to dismiss on that basis.

[2] Plaintiffs also failed to meet and confer. Judge Graham instructed the parties that a scheduled pretrial conference would go ahead as planned on February 26, 2013, and "because Mr. Selmer did not participate [in a meet and confer conference] on behalf of plaintiff," she instructed them to file their own Rule 26(f) Reports. Letter to All Counsel, February 19, 2013 [Docket No. 35].

late to cancel the hearing, Plaintiffs' attorney filed a motion for continuance [Docket No. 41]. The motion for continuance requested a 14-day continuance "on the basis that Plaintiffs' attorney mistakenly entered the wrong date on his calendar." Id. On March 21, 2013, the four attorneys for the State, Ramsey County, the City of Saint Paul and the Officers, and for the remaining Individual Defendants appeared in court prepared to argue their motions to dismiss. Plaintiffs' attorney, Scott Selmer, appeared in court but stated he was not prepared to argue the motions and requested a continuance.

Instead of proceeding with a one-sided motions hearing, the Court allowed Defendants to rest on the record of their briefing. Plaintiffs' counsel was advised that Defendants' briefing suggested a strong case for dismissal. The Court advised Plaintiffs could choose to proceed and be granted a continuance to submit a responsive brief, but Plaintiffs' attorney would be expected to pay for the costs of delay. Defendants had incurred costs of briefing the merits of their motions to dismiss and of having their attorneys appear in Court unable to proceed with oral argument. Order, Mar. 22, 2013 [Docket No. 44]. If Plaintiffs chose not to proceed, the case would be dismissed with prejudice but without costs imposed. Plaintiffs were given 14 days to comply with the Court's Order, until Friday, April 12, 2013. Id. On March 29, 2013, Plaintiffs' attorney filed a Motion to Withdraw Without Substitution, but Mr. Selmer's supporting documents reflected that he had only spoken to one of the Plaintiffs, Roberto Franco, and not to his eight other clients. [Docket Nos. 50 and 51]. Mr. Selmer's request to withdraw was denied, with the Order instructing him to communicate with his other clients and advise the Court as to the status of all of his clients. Order, Apr. 2, 2013 [Docket No. 53].

On April 12, 2013, the deadline for complying with the Court's March 22, 2013 Order, Plaintiffs filed several documents, none of which are responsive to the Order. The first document is entitled Plaintiffs' Motion for Extension to File Reply Brief [Docket No. 54]. This document simply states that "plaintiffs' attorney is not able to respond to the defendants' motion [to dismiss] by April 12, 2013, due to limitation on his time and resources." Id. The second document filed is entitled Scott Selmer's Declaration in Support of Plaintiffs' Motion for Extension to File Reply Brief [Docket No. 55]. This document simply states Plaintiffs' wish for him to proceed with this matter, but "[d]ue to limited time and resources plaintiffs' attorney is not able to respond to the defendants' motion[s to dismiss]." Id. at ¶¶ 1-2.

A few days later, on April 15, 2013, Plaintiffs filed: 1) Plaintiffs' Brief in Response to Defendants' Motion to Dismiss [Docket No. 56]; and, 2) Motion to Deny Defendants' Motion to Dismiss [Docket No. 57], which does not appear to be a motion, but rather a further response to Defendants' motions to dismiss. Plaintiffs' filings are discussed further below, but the Motion to Deny simply states, "Plaintiffs move the court for denial of defendants' motion to dismiss with prejudice or alternatively to allow voluntary dismissal without prejudice." Attached to the Motion to Deny, a declaration by Mr. Selmer informs the Court that:

[1]      Declarant was advised that all plaintiffs wished to move forward with this case.
[2]      Declarant has had the opportunity to research some of the cases that were included in defendants' brief, specifically Rooker-Feldman doctrines.
[3]      Declarant believes that in view of such case law it may be appropriate that the court permit plaintiffs to voluntarily dismiss the current cause of action without prejudice pending exhaustion of litigation of the pending litigation in the Minnesota state court system.

Selmer Decl. ¶¶ 7-9.

On April 17, 2013, the State filed a Reply [Docket No. 58], again requesting dismissal. On May 31, 2013, Mr. Selmer sent a letter requesting permission to file a motion for reconsideration of sanctions [Docket No. 59].

It has now been almost four months since Plaintiffs' response to the first motion to dismiss, [Docket No. 21], was due to be filed. At best, only one paragraph has been filed which addresses the substance of Defendants' motions to dismiss.

**B. Allegations from the Amended Complaint and State Court Proceedings[3]**

On July 13, 2010, the Dakota County Drug Task Force, including the Officers and the remaining Individual Defendants, conducted a "drug raid" at 171 Annapolis Street East in Saint Paul. Am. Compl. ¶¶ 6-7, 14. Law enforcement officials who participated included members of the Saint Paul Police Department and Agent Melton of the DEA. Id. at ¶ 7. Judge Rosanne Nathanson had issued Scovill a search warrant for the residence at 171 Annapolis Street East, as the location of drug dealing, and for Rafale Ybarra, the suspected drug dealer. Brita Carnine Aff. [Docket No. 28], Ex. D. (the "Search Warrant"). The Officers were given permission to search the residence and Ybarra for methamphetamine, firearms, and other items connected to the illegal sale of drugs. Id. Ybarra lived next door at 165 Annapolis Street East, not 171. Am. Compl. ¶ 13.[4]

---

[3] In considering Defendants' motions to dismiss, the Court considers the facts alleged in Plaintiffs' Amended Complaint to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). The Court may also consider materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

[4] The Amended Complaint asserts the Plaintiffs also lived at 165 Annapolis. But, the Amended Complaint also asserts that the Plaintiffs were at 171 Annapolis when the raid took place and all of their allegations stem from events during and after that raid. There is no dispute that the Officers entered 171 Annapolis, the address listed on the Search Warrant.

During the search, the Officers found a .22 caliber handgun. Carnine Aff. Ex. A. Roberto Franco ("Franco") was charged with Possession of a Firearm by an Ineligible Person, in violation of Minnesota Statutes. Id. At his trial, Franco argued that the search warrant was not based on probable cause for his address, 171 Annapolis.[5] Ramsey County District Court Judge Judith Tilsen reviewed the evidence and determined that there was sufficient probable cause to support the search warrant; she denied Franco's motion to suppress the evidence from the search. Id. Ex. E. Judge Tilsen based her opinion on an in camera interview with the police officers' confidential informant, who described witnessing the sale of drugs at 171 Annapolis. Id. On November 8, 2011, a jury found Franco guilty of the firearm possession charge. He is currently appealing his conviction in state court. Id. Ex. G.

In this civil action, Plaintiffs allege that during service of the warrant, law enforcement officers "negligently and intentionally" violated Plaintiffs' constitutional and civil rights. Id. at ¶¶ 18-19. Most of the allegations single out Scovill. Allegedly, Scovill provided false and misleading information to Ramsey County Judge Nathanson, upon which Judge Nathanson wrongly based her decision to grant the warrant. Id. at ¶¶ 20-22. Next, Plaintiffs allege, Scovill committed perjury at an unidentified time, but presumably at Franco's trial. Id. at ¶¶ 23-27. Plaintiffs also allege the Dakota County Drug Task Force "illegally and improperly searched" Plaintiffs. Id. at ¶¶ 28-30, 33. The only details provided about officer conduct pertain to minors R.F. and A.F. R.F. alleges he was kicked in the side, handcuffed, and searched at gun-point. Id. at ¶ 31. A.F., a diabetic, alleges that an officer prevented her from taking needed medication. Id. at ¶ 32. Finally, Plaintiffs allege the officers conspired to cover up the fact that they entered

---

[5] Mr. Selmer is also Franco's criminal attorney.

the wrong home and conspired to "convict Franco of a crime in order to render any attempt of civil redress by the plaintiffs less tenable." Id. at ¶¶ 34-36.

## III.  DISCUSSION

Plaintiffs request denial of Defendants' motions to dismiss or, alternatively, permission to voluntarily dismiss this action without prejudice.  Plaintiffs do not have the option of dismissing the case as of right; Defendants have answered both the Complaint and the Amended Complaint.  See Fed. R. Civ. P. 41(a)(1).  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Id. at Rule 41(a)(2).  Having received Plaintiffs' "Brief in Response to Defendants' Motion to Dismiss," and considering the extended time Plaintiffs have had to file this Response, the Court shall consider both the merits of Defendants' motions and Plaintiffs' limited filings.

**A.  Motion to Dismiss Standard of Review**

**1. Subject Matter Jurisdiction**

If subject matter jurisdiction is lacking over a claim, the claim must be dismissed.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).  The Court may "dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Johnson v. United States, 534 F.3d 958, 964 (8th Cir. 2008) (internal quotation and citation omitted).  The basis for a dismissal for lack of subject matter jurisdiction depends on whether the complaint is challenged on its face or on the factual truthfulness of its averments.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a facial challenge, the court

restricts itself to the face of the pleadings, and all of the factual allegations concerning jurisdiction are presumed to be true. Titus, 4 F.3d at 593.

**2. Failure to State a Claim**

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs a motion to dismiss for failure to state a claim. In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true. See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B. The State, Ramsey County, the City of Saint Paul, and the Saint Paul Police Department**

    **1. Lack of Subject Matter Jurisdiction**

The Eleventh Amendment to the United States Constitution prohibits suits against a state in federal court, unless the state consents or Congress has unequivocally abrogated the state's sovereign immunity. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 243 (1985). There is no suggestion the State has consented to this suit. And, Congress did not abrogate the states' Eleventh Amendment immunity when enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979); Singletary v. Mo. Dep't of Corr., 423 F.3d 886 (8th Cir. 2005) (holding that a state is absolutely immune from suit under § 1981); Beach v. Minnesota, No. 03-862, 2003 U.S. Dist. LEXIS 10856, at *8-9 (D. Minn. June 25, 2003) (Congress has not abrogated state immunity by enacting § 1985), aff'd, 92 F. App'x 386 (8th Cir. 2004); Jensen v. Henderson, 315 F.3d 854, 863 (8th Cir. 2002) (§ 1986 claim is dependent upon a valid § 1985 claim).

In addition, to the extent the Amended Complaint states that the action arises under "the Fourth and Fourteenth Amendments of the United States Constitution," there is no direct cause of action by way of the Amendments; rather the vehicle for vindicating constitutional rights is 42 U.S.C. § 1983. Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."), cert. denied 506 U.S. 1081 (1993). Plaintiffs' federal claims against the State are barred by the Eleventh Amendment.

    **2. Failure to State a Claim**

The Amended Complaint must also be dismissed because it fails to state a claim as to the State, Ramsey County, and the City of Saint Paul. Under § 1983, a plaintiff may sue a city for a

deprivation of constitutional rights if the city took formal action to cause the deprivation. A formal action, or policy, is one that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). In addition to an officially adopted policy, liability may attach to a City for constitutional deprivations that result from "custom," even though the city may not have formally approved the custom. See id.; see also Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003), abrogated in part on other grounds, Szabala v. City of Brooklyn Park, 486 F.3d 385 (8th Cir. 2007).

In this case, Plaintiffs list the State, Ramsey County, and the City of Saint Paul as defendants, but Plaintiffs fail to allege a single action taken by any of these entities. Therefore, since there is no basis for a claim, these Defendants must be dismissed from the suit.

**C. Saint Paul Officers and Dakota County Drug Task Force Individual Defendants**

**1. Failure to State a Claim**

Although Plaintiffs have not alleged actions of the state, county, or city entities, if Plaintiffs have stated a claim against an official, operating in an official capacity, they may still have a claim against one of these entities vicariously.

"Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). To bring a claim against an official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, or it will be presumed that the claim is brought against the official in an official capacity only. Id.

In this case Plaintiffs failed to specify what capacity they were suing the Officers; therefore, it must be presumed that the Officers are being sued in their official capacity.

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). A municipality, such as Saint Paul, may be liable under § 1983 only where a policy or custom of that entity caused the alleged constitutional violation. Monell, 436 U.S. at 690–92. Stated another way, a local government is liable under § 1983 only where its policy or custom is the "moving force" behind a constitutional violation. See id. at 694–95. Under certain circumstances, a municipality's failure to adequately train its police officers can be such a policy or custom. City of Canton v. Harris, 489 U.S. 378, 380 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. In the Eighth Circuit, deliberate indifference must be established by showing that a municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. See Thelma D. v. Bd. of Educ., 934 F.2d 929, 934 (8th Cir. 1991). A plaintiff can show such notice either by showing (1) failing to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of constitutional violations put the municipality on notice that its employees' responses to recurring situations are insufficient. Id. at 934–35.

Plaintiffs have failed to make any allegations of official policy or custom; therefore, Defendant Officers' motion to dismiss for failure to state a claim must be granted.

### 2. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine stands for the concept that federal courts lack subject matter jurisdiction over certain challenges to state court judgments. Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983). The Rooker-Feldman

12

doctrine "is applied to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" MSK EyEs Ltd. v. Wells Fargo Bank, N.A., 546 F.3d 533, 539 (8th Cir. 2008) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Federal courts also lack jurisdiction over federal claims "inextricably intertwined" with claims already adjudicated in state court. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999). A claim is "inextricably intertwined" with a state court judgment when it would succeed only if the state court wrongly decided the issues or if the requested relief would effectively reverse or void a state court decision. Id. at 1034-35; Lemonds v. St. Louis Cnty., 222 F.3d 488, 493 (8th Cir. 2000).

In this case, the Court need not delve deeply into an analysis of the Rooker-Feldman doctrine.[6] Plaintiffs concede "it may have been premature for plaintiffs to bring their suit in the lower U.S. federal courts, while similar issues were on appeal in the Minnesota state court system. . . ."[7] Pls.' Br. Resp. 2-3. Considering the allegations, application of the Rooker-Feldman doctrine is even more clear. Judge Tilsen reviewed the search warrant for 171 Annapolis during Franco's trial. She determined that probable cause supported its issuance to Scovill. Plaintiffs' allegations here deal with the probable cause issue directly. Plaintiffs allege Scovill provided false and misleading information to obtain the search warrant. These are issues

---

[6] Defendants also raised the Younger abstention doctrine, which recommends staying proceeding when state proceedings are pending. Younger v. Harris, 401 U.S. 37 (1971). Plaintiffs have entirely neglected to address this argument. Given the other grounds for dismissal, a stay is not appropriate here.

[7] Plaintiffs' attorney filings fail to distinguish between what may be the very different procedural posture of Roberto Franco, Gilbert Castillo, and the rest of the Plaintiffs.

13

Judge Tilsen would have necessarily addressed in her in camera consideration of the search warrant at trial.  In addition, Judge Tilsen would have dealt with any allegations of perjury at trial.  Plaintiffs allege Scovill perjured himself during testimony; but perjury is an issue that defense counsel should have raised at trial and/or on criminal appeal.  Subject-matter jurisdiction, as found in the Rooker-Feldman doctrine, does not allow the United States District Court to re-open these issues and second guess state court decisions.

**D.  Reconsideration of Sanctions**

Pursuant to Local Rule 1.3 of the United States District Court for the District of Minnesota, if an attorney violates the local rules, the court may impose appropriate sanctions, financial or otherwise, as needed to protect the parties and the interests of justice.  Here, the interests of justice are served by a dismissal with prejudice of Plaintiffs' claims.  On May 31, 2013, Mr. Selmer sent a letter, in accordance with Local Rule 7.1, requesting permission to file a motion for reconsideration of sanctions [Docket No. 59].  However, Local Rule 7.1 is very clear that this letter should state "compelling circumstances to obtain such permission."  No reason at all was given for reconsideration, so permission will not be granted.

Most of Plaintiffs' attorney's early issues with following the local rules received accommodations.  But after failing to file a response on time, even after being granted an extension, the Court will not reconsider sanctions.  From before Plaintiffs' attorney signed the initial Complaint, but especially after he filed the Amended Complaint, Plaintiffs' attorney assumed ethical responsibilities to represent all of his clients.  Minn. R. Prof. Conduct, Rule 1.1 and 1.7.

## IV.  CONCLUSION

Plaintiffs agree that dismissal is appropriate.  Dismissal with prejudice is appropriate given the procedural history of this case, the failure to state a claim, and the Rooker-Feldman doctrine.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. State of Minnesota's Motion to Dismiss [Docket No. 21] is **GRANTED WITH PREJUDICE**;

2. Ramsey County's Motion to Dismiss [Docket No. 25] is **GRANTED WITH PREJUDICE**;

3. Defendants City of Saint Paul, Saint Paul Police Department, Officer Anderson, Officer Chesier, and Officer Gromek's partial Joinder in Ramsey County's Motion to Dismiss [Docket No. 34] is **GRANTED WITH PREJUDICE**;

4. Defendants Shawn Scovill, Andy Gubash, Mike Heski, Rick Porras, Jeremiah Simonson, Tommie Booth, Jason Polinski, and Chris Melton's partial Joinder in Ramsey County's Motion to Dismiss [Docket No. 40] is **GRANTED WITH PREJUDICE**;

5. Plaintiffs' Motion for Continuance [Docket No. 41] is **DENIED**;

6. Plaintiffs' Motion for Extension of Time to File Response [Docket No. 54] is

   **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                                  BY THE COURT:


                                                  s/Ann D. Montgomery
                                                ANN D. MONTGOMERY
                                                U.S. DISTRICT JUDGE

Dated:  June 11, 2013.